## Clay Clifford vs. Ralph Tucker
## Clay Clifford vs. Joseph Marino, Jr.

### JANUARY 10, 1963.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Powers, J. These are two actions of trespass on the case for negligence, brought to recover damages to property and for personal injuries allegedly resulting from the negligent operation of a motor vehicle on a public highway in the town of Westerly. The cases were consolidated for trial to a jury before a superior court justice and resulted in a verdict

for the plaintiff in the sum of $239.12 in each case. They are before us on his bills of exceptions to the decision of the trial justice denying his motions for new trials or an additur.

It appears from the record that plaintiff, while operating a motor vehicle on Winnapaug Road in the town of Westerly on July 28, 1957, at about 4:15 p.m., halted in a line of traffic at an intersection. While thus stopped, the motor vehicle operated by him was struck from behind by a car operated by Ralph Tucker, owned by and registered to Joseph Marino, Jr. Damage to plaintiff's car amounted to $239.12.

It further appears that despite headaches and pain in the back of his neck, plaintiff made no immediate complaint of personal injuries. He was employed as a timekeeper on the midnight-to-eight shift of the Electric Boat Division of General Dynamics Corporation in Groton, Connecticut, hereinafter referred to as Electric Boat, and reported for work as usual at midnight following the accident.

The following day, at the urging of his wife and sister, plaintiff visited Dr. Freedman B. Agnelli. Doctor Agnelli was not plaintiff's personal physician, but maintained an office in a building at the rear of the property on which plaintiff's home was located. The doctor testified that as a result of his examination of July 29, 1957 he told plaintiff that he had a whiplash injury of the neck and advised him to receive further diagnosis and treatment. However, it appears that plaintiff did not seek medical treatment until some ten months later, although he testified that he sought treatment for severe pain in the back of the neck at the first-aid station at Electric Boat "Possibly 10 or 12 times."

In May 1958 plaintiff was admitted to Westerly Hospital where he was hospitalized for about three weeks. He was treated by Dr. John Pinto for a suspected heart condition, although Dr. Pinto testified that an electrocardiogram in November 1960 showed no current or active damage to the

heart. After being released, plaintiff went back to work at Electric Boat, but in August 1958 was again admitted to the Westerly Hospital. On November 4, 1960, plaintiff blacked out in Westerly and fell after experiencing a severe pain in his neck and again was taken to Westerly Hospital. The plaintiff continued to have such pains and was hospitalized in Hartford a couple of weeks before the trial. He had stopped working at Electric Boat in December 1958, and in February 1959 he enrolled at the University of Rhode Island.

There was evidence that plaintiff, while working as a metalsmith in 1950, had suffered a severe injury to his back, for which he underwent two operations. He remained unemployed until approximately three months before the accident of July 28, 1957 when he started working as a timekeeper at Electric Boat.

Several doctors who had examined or treated him testified at the trial, but with the exception of Dr. Agnelli none stated definitely that he had suffered a whiplash injury as a result of the accident. He had complained to each of the doctors of symptoms consistent with the alleged injury and a careful reading of the transcript indicates that to some extent they based their opinions on his complaints.

By their verdicts the jury obviously awarded plaintiff damages only for his out-of-pocket expenses for damage to his automobile. Thereafter plaintiff duly filed a motion in each case for a new trial on the grounds that the damages awarded were inadequate, that the insufficient verdict was contrary to the manifest weight of the evidence, that it was against the clear preponderance of the testimony, and that it failed to do substantial justice between the parties. The motions for a new trial in these cases were heard some eight months after the trial. In the meantime a transcript of the testimony at the trial had been prepared and the trial justice had the benefit of the use thereof to refresh his recollection and supplement his personal observations

during the course of the trial before ruling on the motions. After he denied such motion in each case, plaintiff duly prosecuted his bills of exceptions.

The plaintiff first contends that the decision was erroneous for the reason that the trial justice failed to pass independently on the weight of the evidence and the credibility of the witnesses. It is well settled that such is his duty in considering a motion for a new trial. We cannot agree, however, that in the instant cases he did not comprehend that duty and duly discharge it.

His decision readily discloses that he reviewed the evidence independently, commented thereon and on the inferences reasonably to be drawn therefrom, and discussed the question of credibility. It further appears that he exercised his independent judgment in approving the verdict by finding that it was supported by the evidence and did substantial justice.

The plaintiff strenuously urges that a reference by the trial justice to the possibility that he "perhaps would come to a different conclusion" if acting as a trier of fact in the absence of a jury, clearly demonstrates that the trial justice was not independently passing upon the evidence, but was rather reviewing the jury's verdicts. The comment in question, when taken out of context, might conceivably lead to such a conclusion. When read in connection with the circumstances to which it referred, however, it becomes clear that the trial justice merely meant that the evidence was such as to cause reasonable minds to differ in their appraisal thereof. We have heretofore held that a trial justice is not warranted in substituting his judgment for that of the jury when the conclusions of the jury are such as might have been reached by reasonable minds. *McMahon* v. *Rhode Island Co.*, 32 R. I. 237; *Talon* v. *Jackson*, 68 R. I. 488.

The plaintiff alternately contends that if the trial justice did comprehend the applicable rule of law, he nevertheless overlooked and misconceived certain material evidence. He

calls our attention to the observation made by the trial justice that plaintiff did not seek medical treatment within a reasonable time and in contradiction thereof points to the fact that he, the plaintiff, visited Dr. Agnelli on the evening following the day of the accident and further was treated some ten or twelve times at the first-aid station maintained by his employer.

The facts are, however, that it was plaintiff's own testimony that he visited Dr. Agnelli at the insistence of others, at that time received no treatment whatsoever from the doctor, and was not thereafter seen by a doctor for some ten months. His testimony that he had been treated by a nurse at the infirmary was uncorroborated, a fact to which the trial justice made pointed reference. The plaintiff also calls our attention to a statement by the trial justice to the effect that plaintiff had not completely recovered from an original injury to the base of the spine. Yet, he argues, it is the uncontradicted testimony of all the doctors who examined him that he had no residual effect from the injury of 1950.

The trial justice reviewed the testimony of the doctors, commented upon Dr. Savastano's finding of muscle spasm in the lower part of plaintiff's back, and drew the inference of which plaintiff complains. The trial justice, however, in drawing such inference, clearly coupled the doctor's testimony with plaintiff's that he had not worked for years following the injury of 1950, that he had been working only three months at the time of the accident, and that the work which he was then doing was lighter than that previously required of him as a sheet metal worker. In the light of the medical testimony and the background of plaintiff's activities it cannot be said that the inference drawn by the trial justice was unreasonable.

The plaintiff makes much of what he clearly considers to have been unwarranted references to the alleged symptoms of a whiplash injury as being subjective in nature.

In this regard plaintiff overlooks the instructions given by the trial justice to the jury that the symptoms of a whiplash injury are subjective; that such an injury is not apparent in the sense that a fracture is apparent; that in making a diagnosis in such cases doctors must rely on what they are told by the patient; that if plaintiff's complaints were credible, the jury were entitled to give such weight as they chose to the opinion evidence of the doctors; but that if they did not believe plaintiff they should give the opinion evidence no weight at all.

No exception was taken thereto by plaintiff and it became the law of the case. If he now entertains doubts as to its correctness, it is too late to raise the question here. Such being the law as the trial justice gave it to the jury, he was obligated to follow it in passing on plaintiff's motions for a new trial.

It is clear from the trial justice's review and evaluation of the evidence and the repetition in his decision thereon as to the weight which might be given to the medical testimony, that he doubted plaintiff's credibility. Indeed the whole tenor of the decision is to the unlikelihood that plaintiff was suffering from an injury which arose out of the accident of July 28, 1957.

We are of the opinion that the trial justice fully comprehended the nature of his duty and, in the performance thereof, did not misconceive or overlook any material evidence or fail to independently appraise the credibility of the witnesses. A trial justice has wide latitude with respect to the form in which he shall state the reasons for his decision on a motion for a new trial. *Chase* v. *Goyette*, 85 R. I. 469.

Nor did the trial justice err in denying an additur. He independently concurred in the verdicts which in effect were based on the view that the plaintiff's injuries did not flow from or were not the proximate result of the accident for which the defendant was responsible. The granting of

an additur in such a circumstance would have constituted a reversal of the trial justice's judgment on the issue of personal injuries.

In each case the plaintiff's exception is overruled, and each case is remitted to the superior court for entry of judgment on the verdict.

*Cappuccio & Cappuccio, Frank S. Cappuccio,* for plaintiff.

*Martin M. Zucker,* for defendants.